# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| DEREK TYLER SMITH, | : | |
| Plaintiff, | : | |
| vs. | : | CA 20-0288-MU |
| ANDREW M. SAUL, Commissioner of Social Security, | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Derek Tyler Smith brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 15 & 16 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the oral arguments of the parties, the Court concludes that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 15 & 16 ("An appeal from a
(Continued)

**I. Procedural Background**

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on June 22, 2016,[2] alleging disability beginning on March 6, 1992. (*Compare* Doc. 9, PageID. 79 *with id.,* PageID. 344-51). Smith's claims were initially denied on August 2, 2016 (*id.,* PageID. 208-09 & 242-53) and, following Plaintiff's September 27, 2016 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 254-56), a hearing was initially conducted before an ALJ on April 18, 2018 (see *id.,* PageID. 176-86), with a supplementary hearing being held on May 15, 2019 (*id.,* PageID. 101-64).[3] On June 4, 2019, the ALJ issued a decision finding that the claimant was not disabled and therefore, not entitled to social security benefits. (*Id.,* PageID. 79-94). The ALJ determined at the fifth step of the five-step sequential evaluation process that Smith retains the residual functional capacity to perform sedentary work and, more specifically, those sedentary jobs identified by the vocational expert ("VE") at the supplemental administrative hearing conducted on May 15, 2019. (*Compare id.,* PageID. 23 & 93-94 *with id.,* PageID. 160-63). On June 20, 2019, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 279-81); the Appeals Council denied Smith's request for review on April 29,

---

judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

  [2]  On January 18, 2017, the Social Security Administration published revisions to its regulations which apply to claims filed on or after March 27, 2017. *See, e.g., Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020). Given the protective filing date of Reese's applications of March 23, 2017, the revisions to the Commissioner's regulations **are not** applicable in this case.

  [3]  At the supplemental hearing, Smith amended his alleged onset date to June 22, 2016. (*Compare id.,* PageID. 79 *with id.,* PageID. 103-04).

2020 (*id.,* PageID. 63-65). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to Lyme disease, agoraphobia with panic attacks, mood disorders, bipolar disorder, anxiety disorder, infective myositis, fatigue, headaches, and history of substance abuse disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.    The claimant has the following severe impairments: Lyme disease; agoraphobia with panic attacks; mood disorders; bipolar disorder; anxiety disorder; infective myositis; fatigue; headaches; and history of substance abuse disorder (20 CFR 404.1520(c) and 416.920(c)).**
>
> .   .   .
>
> **4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .   .   .
>
> **5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and can occasionally stoop, kneel, crouch, and crawl. The claimant's ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks, and his ability to use judgment is limited to simple work-related decisions. The claimant can interact with supervisors, coworkers, and the public occasionally, and can deal with occasional changes in a routine work setting.**
>
> .   .   .
>
> **6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.     The claimant was born on March 6, 1992 and was 24 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

. . .

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 22, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Doc. 9, PageID. 82, 83, 85, 92, 93 & 94 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation:

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[4] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Smith asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ committed reversible error, in violation of 20 C.F.R. §§ 404.1527(d) and 416.927(d), in failing to assign controlling weight to the opinions of treating physicians Dr. Guido Ludergnani and Dr. Jonathan Forester and, instead, adopting his own medical opinion in violation of SSR 96-2p; and (2) the ALJ erred in failing to properly evaluate the opinions two nurse practitioners, Scott Durrance and Leif Erik Sternung under 20 C.F.R. §§ 404.1513, 404.1527, 416.913 & 416.927, as he rejected them because they were not derived from an acceptable medical source instead of evaluating them as opinions from

---

[5] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

other medical sources. The undersigned considers both of these assignments of error together.

    **A. Opinion Evidence.** "Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Security Administration,* 164 Fed.Appx. 919, 923 (11th Cir. 2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 686 Fed.Appx. 731, 732 (11th Cir. 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'").

"When weighing each medical opinion,[6] the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Commissioner of Social Security,* 716 Fed.Appx. 917, 919 (11th Cir. Nov. 27, 2017), citing 20 C.F.R. § 416.927(c) (footnote added); *see also Jacks v. Commissioner, Social Security Administration,* 688 Fed.Appx. 814, 819 (11th Cir. May 23, 2017) ("The ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including whether the doctor has examined the claimant, the medical evidence and explanation supporting the doctor's opinion, and how consistent the doctor's 'opinion is with the record as a whole.'" (citations omitted)). "These factors apply to both examining and non-examining physicians." *Huntley v. Social Security Administration, Commissioner,* 683 Fed.Appx. 830, 832 (11th Cir. Mar. 29, 2017) (citations omitted).

> When considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the administrative law judge] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the administrative law judge] will give that opinion." Moreover, "because nonexamining sources have no examining or treating relationship with [the applicant], the weight [the administrative law judge] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." In addition, "the more consistent an opinion is with the record as a whole, the more weight [the administrative law judge] will give to that opinion."

---

[6] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

8

*Id.* at 832-33 (internal citations omitted; footnote added). A panel of the Eleventh Circuit has determined that an "ALJ is not required to explicitly address each" of the factors set forth in § 416.927(c), *see Lawton v. Commissioner of Social Security,* 431 Fed.Appx. 830, 833 (11th Cir. June 22, 2011), and that the core inquiry is whether "good cause" exists for rejecting particular medical opinions, *see id.*

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In addition to the foregoing, it is clear that nurse practitioners are not "acceptable medical sources," *see, e.g.,* 20 C.F.R. §§ 404.1513(a), 416.913(a), and, therefore, they "are weighed the same as any other lay witness." *McBride v. Berryhill,* 2017 WL 2313008, *4 (S.D. Ga. Apr. 21, 2017) (citations omitted), *report and recommendation adopted,* 2017 WL 2312991 (S.D. Ga. May 26, 2017).

> And all that is required of an ALJ regarding non-medical source evidence is that the evidence be considered. *See* 20 C.F.R. §§ 416.926, 416.926a, 416.927, 416.919. There is no requirement that an ALJ give any particular amount of weight to non-medical source evidence. *See id.*
>
>> In rejecting lay witness testimony, the ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if she does "not clearly link [her] determination to those reasons." An ALJ may reject lay witness testimony if it is inconsistent with the record.
>>
>> The ALJ may "draw inferences logically flowing from the evidence." Further, "i]f the ALJ gives germane reasons for rejecting testimony by one

9

witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."

*Id.* at *4-5 & *5 (most internal citations omitted).

With these principles in mind, the undersigned considers whether the ALJ improperly considered the opinion evidence in this case. The ALJ analyzed the opinion evidence from physicians and other sources (about which Plaintiff makes reference) in the following manner:

> As for the opinion evidence, the undersigned gives little weight to the April 2017 opinions [of] L. Erik Sternung, ARNP and Guido Ludergnani, M.D., two of the claimant's treatment providers. They opined that the claimant has extreme limitations in the ability to interact appropriately with the general public, coworkers, and peers; to understand, remember, and carry out complex instructions; maintain attention and concentration for extended periods; to perform at a consistent pace without an unreasonable number and length of rest periods; to respond to customary work pressures; and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. They further opined that the claimant had marked limitations in his ability to ask simple questions or request assistance; to understand, remember, and carry out simple instructions; to understand, remember, and carry out repetitive tasks; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain a routine without supervision; to make simple work-related decisions; to respond appropriately to supervision; to respond appropriately to changes in a work setting; and to be aware of normal hazards and take appropriate precautions. They further opined that the claimant has an extreme estimated degree of deterioration in his personal habits, and a marked constriction of interests [] in his daily activities.
>
> No support is provided for these significant limitations. Indeed, these opinions are wholly inconsistent with the overall evidence of record, which show improved mental functioning when the claimant is compliant with his medication and is not taking illegal substances. Furthermore, these opinions are inconsistent with the claimant's reported activities of daily living during the period of adjudication, which include doing chores around the house, attending church, working a part-time job, and taking online courses. Finally, Erik Sternung is a nurse practitioner, and therefore not a medically acceptable source. There was minimal indication in the record that Dr. Ludergnani had regular contact with the claimant. As the opinions outlined above are unsupported by clinical evidence and inconsistent with

10

> both the medical record and the claimant's reported activities of daily living, the undersigned gives [them] little weight.
>
> . . .
>
> The undersigned also gives little weight to the opinion of Jonathan Forester, M.D., that the claimant cannot engage in any form of gainful activity on a repetitive, competitive and productive basis over an 8 hour workday, 40 hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions to his work routine due to his symptoms. As an initial matter, this opinion is on an issue reserved to the Commissioner. Dr. Forester does not provide a function-by-function analysis of the claimant's limitations, and what opinion he does render is based upon the subjective complaints of the claimant. Indeed, his opinion is not consistent with the medical evidence of record reflecting that the claimant was doing well with his treatment and exhibiting minimal symptoms. As there is no reasonable support given for Dr. Forester's opinion and it is inconsistent with the overall evidence of record, the undersigned gives this opinion little weight.
>
> . . .
>
> The undersigned notes but gives little weigh[t] to the opinion of Louann Smith, the claimant's mother. Mrs. Smith is not a medically acceptable source, and her opinion is not consistent with the claimant's functioning or the other opinions found in the medical evidence of record. The undersigned similarly gives no weight to the opinions of the claimant's other treatment provider, Scott Durrance, MSN, ARNP, found in Exhibit 5F and 20F, as this nurse practitioner is also not an acceptable medical source.

(Doc. 9, PageID. 89-90, 90-91 & 92 (internal citations omitted)).

Initially, the undersigned finds the reasons offered by the ALJ for affording little weight to the mental RFC opinions of Leif Erik Sternung, ARNP and Dr. Guido Ludergnani supported by substantial evidence. As the Court sees it, the ALJ offered three reasons for the "little weight" afforded the opinions of Sternung and Ludergnani: (1) no clinical support was provided for those significant limitations (in other words, the limitations were inconsistent with the clinical findings of Sternung and Ludergnani); (2) the limitations were inconsistent with the overall medical evidence of record (that is, the

11

noted limitations are not bolstered by the evidence); and (3) the limitations are inconsistent with the claimant's reported activities of daily living during the period of adjudication. So, clearly, the ALJ stated with particularity the weight ("little") afforded to the medical RFC opinions of Sternung and Ludergnani and the reasons therefor. *See Romeo, supra,* 638 Fed.Appx. at 847. And the undersigned finds that "good cause" was shown for giving the RFC opinions of Sternung and Ludergnani little weight because, the ALJ is right, the extreme limitations noted are not supported by the clinical evidence recorded by Sternung (*see, e.g.,* Doc. 9, PageID. 535-549 & 640-45 (objective observations consistently revealed Smith to be cooperative and engaged in the interview with appropriate eye contact; no evidence of psychomotor agitation or retardation; speech was fluent and normal in rate, rhythm, and tone; he was alert and oriented to person, place, time and situation; his mood appeared good and his affect congruent; his thought process was organized, linear and goal directed; more often than not, his thought content revealed no evidence of auditory or visual hallucinations, delusions or paranoia, and no loose associations, tangentiality or circumstantiality; he denied suicidal and homicidal ideations; his memory appeared grossly intact; and his insight and judgment appeared to be intact and adequate)) nor are they consistent with Smith's admitted activities of daily living (*see id.,* PageID. 389-96 (functional report completed by Plaintiff reflects that, on a daily basis, he listens to music, watches television, walks outside, talks on the telephone, uses the computer, helps care for his daughter, can take care of all his personal needs, and performs light household chores, like taking the trash outside, washing the cars, doing dishes, and vacuuming); *compare id. with id.,* PageID. 107, 119 & 151 (plaintiff's testimony that he takes online classes,

12

paints, and reads); *accord id.,* PageID. 679, 684 & 697 (Smith told a treatment provider in late 2018 and early 2019 he was exercising 6 times a week lifting light weights)).[7] Accordingly, the Court finds that the ALJ did not err in affording only little weight to the mental RFC limitation opinions of Sternung and Ludergnani.

On April 3, 2019, Dr. Jonathan Forester completed a pre-printed check-the-box, multiple choice and fill-in-the-blank questionnaire form; the opinion reflected thereon was given "little" weight by the ALJ. (*Compare* Doc. 9, PageID. 90-91 *with id.,* PageID. 883). Initially, this Court finds it hard to view Dr. Forester's opinion (*see id.* (Forester checked "No" when asked if Smith could "engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight hour work day, forty hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions to his[] work routine due to symptoms of his[] disease or medical problems")) as anything other than an opinion regarding whether Smith can hold a job, which, of course, is a vocational opinion as opposed to a medical one and, as such, a question reserved to the ALJ/Commissioner. *See Hutchinson v. Astrue,* 408 Fed.Appx. 324, 328 (11th Cir. Jan. 18, 2011). Nevertheless, even assuming that the ALJ erroneously concluded that Dr. Forester's opinion is on an issue reserved to the Commissioner (*see* Doc. 9*,* PageID. 90), any such error in this regard is harmless since the ALJ also noted that Dr. Forester did "not provide a function-by-function analysis of the claimant's limitations" and that his opinion was not "consistent with the medical

---

[7] In addition, the undersigned cannot find any error in the ALJ's statement that Sternung, as a nurse practitioner, is not an acceptable medical course, since that statement is absolutely true. *See McBride, supra,* at *4 (nurse practitioners are not acceptable medical sources under the social security regulations)).

evidence of record, reflecting that the claimant was doing well with his treatment and exhibiting minimal symptoms." (*Id.*). Indeed, not only did Dr. Forester not perform a function-by-function analysis (*compare id. with* PageID. 883), he provided no explanation for his opinion, though supplied plenty of room for doing so (*id.*); therefore, his "checkbox" opinion is conclusory and "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *see also Terrell v. Saul,* 2020 WL 2097748, *6 n.9 (S.D. Ala. May 1, 2020) (finding fill-in-the-blank PCEs for which the physician supplied no medical basis to be conclusory); *accord O'Connell v. Commissioner of Social Security,* 2020 WL 1492824, *5 (M.D. Fla. Mar. 27, 2020) ("Dr. Komar's opinions are 'checkbox/fill-in-the-blank' forms that courts in this District disfavor. Such forms . . . 'have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.'"). Moreover, the ALJ is correct that Dr. Forester's opinion is not consistent with the medical evidence of record (*see, e.g.,* Doc. 9, PageID. 561 (on June 1, 2017, Dr. George McCullars noted that Plaintiff was physically improved "with resolution of night sweats, no longer w[ith] daily headaches, mostly resolved muscle pain and he no longer has the flu feeling all the time[]" and finding on musculoskeletal examination, normal range of motion and either no tenderness or, at best, mild tenderness in the areas examined); PageID. 715 (on October 3, 2017, Dr. McCullars specifically noted that most of Smith's myalgias had resolved, his energy improved, he is free of fever and night sweats, and he has no headaches; on physical examination of the musculoskeletal system, he again had normal range of motion and either no tenderness or mild tenderness in all areas

14

examined); PageID. 734-35 (Plaintiff presented to the hospital on July 11, 2018, with complaints of abdominal pain; on physical examination, he was noted to be in no acute distress, there was no rash, his extremities exhibited normal range of motion, and there was no lower extremity edema); PageID. 738-39 (Plaintiff presented to the hospital on December 20, 2017, with reports of nausea and diarrhea; on physical examination he was noted to be in no acute distress, with normal range of motion of the extremities and no lower extremity edema)), including Dr. Forester's own clinical notes. Indeed, on the date Dr. Forester filled out the pre-printed questionnaire contained in the record (that is, April 3, 2019), his examination of Smith revealed no significant objective findings (*see* Doc. 9, PageID. 456 (Forester's objective findings included that there was no rash, no nodes, the chest was clear, the heart was within normal limits, and the abdomen was soft)). Moreover, just six months earlier, on October 31, 2018, Forester noted Smith was feeling better and that he moved in a rushed way and reported that he had jogged twice. (*See id.,* PageID. 882). Based upon the foregoing, therefore, substantial evidence supports the ALJ's decision to afford "little" weight to Dr. Forester's checkbox opinion.

Finally, the Court considers the mostly marked and extreme limitations reflected on the mental RFC questionnaire completed by Scott Durrance, a nurse practitioner, on January 24, 2018 (*see* Doc. 9, PageID. 587-88), as well as Durrance's April 11, 2019 opinion that because of his anxiety and depression, Smith "remains extremely and markedly impaired in his ability to work eight hours a day, forty hours a week at any exertional level without having to withdraw from a work setting due to symptoms of his medical condition regardless of any drugs or alcohol use." (*See id.,* PageID. 888). The ALJ afforded "no weight" to these opinions principally because Durrance, as a nurse

practitioner, is not an acceptable medical source. (*See id.,* PageID. 92). However, since the ALJ made reference to Durrance immediately following his analysis of the opinions offered Louann Smith, the claimant's mother, it is clear to the Court that the ALJ also implicitly rejected Durrance's opinions on the same bases identified for rejecting Ms. Smith's opinions, namely that those opinions are "not consistent with the claimant's functioning or the other opinions found in the medical evidence of record[]" (*id.*). *See McBride, supra,* at *5.

      As aforesaid, the ALJ principally determined that Durrance's opinions were due no weight because he was not an acceptable medical source. (Doc. 9, PageID. 92). The undersigned finds that this represents a sufficient reason to give Durrance's opinions no weight in this case since Durrance alone was responsible for the opinions (and the impairments on which those opinions are based), there being no indication that Durrance was treating Smith under the supervision of an acceptable medical source (*see, e.g.,* Doc. 9, PageID. 166-75, 586-639, & 677-98 (clinical notes all signed solely by Durrance)), as was the case with Sternung (*compare, e.g., id.,* PageID. 641 (April 27, 2017 progress note electronically authenticated and signed by Ludergnani) *with* PageID. 558 (both Ludergnani and Sternung signed the mental RFC form on April 27, 2017)). In other words, because it is clear that "information from 'other sources' cannot establish the existence of a medically determinable impairment[,]" *Anteau v. Commissioner of Social Security,* 708 Fed.Appx. 611, 613 (11th Cir. Sept. 14, 2017), and the record makes apparent that Durrance rendered his opinions based on the very diagnoses he made (*see* Doc. 9, PageID. 166-75, 586-639, & 677-98), this Court has no hesitancy in finding that the ALJ properly afforded no weight to Durrance's opinions.

However, even if it was improper to reject Durrance's opinions out-of-hand because he was a non-acceptable medical source, the undersigned finds implicit in the ALJ's decision that he was also giving those opinions no weight for the same reasons he gave Louann Smith's opinion "little" weight and that is because the opinions of Durrance were "not consistent with the claimant's functioning or other opinions found in the medical evidence of record." (*Id.,* PageID. 92). In particular, Durrance's opinions are contrary to those of the medical expert who testified during the administrative hearing on May 15, 2019, Dr. Nicole Martinez. (*See id.,* PageID. 129-39). Dr. Martinez reviewed all evidence of record (*see id.,* PageID. 130) and testified that the clinical notes in the record did not support Durrance's (or Dr. Ludergnani's/Sternung's) opinions regarding marked and extreme limitations (*see id.,* PageID. 135-36 & 139) but, instead, support only the following limitations: a mild degree of limitation in the area of understanding, remembering, and applying information; a moderate degree of limitation in interacting with others; a moderate degree of limitation in concentration, persistence and pace; and a mild degree of limitation in managing oneself (*see id.*, PageID. 134). Moreover, Durrance's opinions regarding marked and extreme limitations are certainly not consistent at all with Plaintiff's activities of daily living, including the ability to successfully navigate online classes. (*See id.,* PageID. 107 & 119). Accordingly, the undersigned finds good cause in the record for the ALJ's conclusion that Durrance's opinions were due to be accorded no weight.

In light of the foregoing and because substantial evidence of record supports the Commissioner's determination that Smith can perform the physical and mental

requirements of a range of sedentary work as identified by the ALJ,[8] and Plaintiff makes no argument that this residual functional capacity would preclude his performance of the sedentary jobs identified by the VE during the administrative hearing (*compare id.,* PageID. 85 *with id.,* PageID. 107, 119, 129-39, 151, 160-63, 389-96, 456, 535-53, 561-70, 576-80, 590-665, 674, 677-98, 715-879 & 882), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

---

[8] That Smith has the ability to perform the physical requirements of a range of sedentary work is supported by the benign objective findings of record (*see, e.g.,* Doc . 9, PageID. 456, 561, 715, 738-39 & 882), along with the evidence of record regarding the claimant's activities of daily living (*see id.,* PageID. 107, 119, 151, 389-96, 679, 684 & 697). And that Plaintiff has the ability to perform the mental requirements of a range of sedentary work is supported by the administrative hearing testimony of Dr. Martinez (*see id.,* PageID. 129-39), the benign objective clinical findings of record (*see, e.g., id.,* PageID. 535-49 & 640-45), and plaintiff's demonstrated ability to successfully navigate online courses (*see id.,* PageID. 107 & 119)..

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 1st day of April, 2021.

s/P. Bradley Murray  
**UNITED STATES MAGISTRATE JUDGE**
